IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE  ) <br> UNITED STATES OF AMERICA FOR AN ORDER  ) <br> AUTHORIZING THE SEARCH OF 285 EAGLE CREEK ) <br> ROAD, CLOVER SOUTH CAROLINA  ) | MISC. NO. _____ |

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent Brian J. Doyle, Federal Bureau of Investigation (FBI), being duly sworn, depose and state the following:

1. I am a Special Agent with the FBI and have served in that capacity since March 2012. I received training in criminal and counterterrorism investigations through the FBI's training academy in Quantico, Virginia. From August 2012 through April 2017, I was assigned to the FBI San Juan Field Office where I investigated matters of Healthcare Fraud and Public Corruption. I am currently assigned to the FBI Columbia Field Office, where I have been a member of the Joint Terrorism Task Force ("JTTF") since May 2017. My duties at the JTTF include investigating criminal violations of federal laws of the United States. As an FBI Special Agent, I have participated in investigations of individuals who are motivated by extremist ideology and groups who commit or conspire to commit criminal acts, including acts of terrorism. I have conducted and participated in physical and electronic surveillance, executed search warrants, debriefed informants and cooperating witnesses, interrogated subjects, and reviewed recorded conversations.

2. This Affidavit is submitted in support of an application to search the property located at 285 Eagle Creek Road, Clover, South Carolina 29710, all outbuildings located on such property (more fully described in Attachment A which is attached hereto and made part

hereof) and any and all vehicles located on the property. I know this location to be Eli Gage EASON's primary residence. EASON is suspected to have purchased chemical precursors and device components with the intent to manufacture and possess a destructive device. The information contained in this affidavit is based upon my personal knowledge and observations, and of records, reports and information received from other law enforcement sources. This Affidavit is not intended to convey all the facts of the entire investigation, but rather to establish cause to support the request for federal search authorization.

## Applicable Statute(s)

3. Title 18, United States Code, Section 922 (g)(1): §

    It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport in in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

4. Title 18, United States Code, Section 921 (a)(3):

    As used in this chapter – The term "firearm" means…(D) any destructive device.

5. Title 18, United States Code, Section 921 (a)(4)(A)

    The term "destructive device" means – any explosive, incendiary, or poison gas— (i) bomb, (ii)grenade, (vi) device similar to any of the devices described in the preceding clauses…(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily

assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon;

### Affiant's Personal Knowledge and Experience

6. Based on my training and experience, I know the following:

    (a) That most people who possess or manufacture destructive devices do so in their homes, vehicles and outbuildings;

    (b) That destructive devices intended for use as weapons often contain anti-personnel elements, commonly referred to as shrapnel. Shrapnel may be affixed to, or inside destructive devices and may include small, sharp objects intended to pierce flesh and damage the human body. Shrapnel may include metal balls, glass, or other fragments. When propelled at high velocity by an explosive charge, shrapnel maximizes the potential of such a device to cause injury in and around the blast radius.

    (c) That persons who possess and manufacture destructive devices usually possess other items related their manufacture, such as the components and tools used to manufacture such devices, photographs of destructive devices or firearms, and receipts for the purchase of these items;

    (d) That persons possess in their residence, vehicles or outbuildings over which they have dominions and control, documents and photographs which indicate their occupancy or ownership of such residences, personal property located thereon, such as personal mail, checkbooks, identification, notes, correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases, mortgage bills, vehicle registration information, ownership warranties, receipts for

vehicle parts and repairs, telephone answering machine introductions and photographs of themselves occupying their residence or vehicles and other tangible evidence of their ownership and possession of such property;

(e) That persons who possess and manufacture destructive devices often conduct research and store communications, receipts, documents and photographs on digital devices. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

7. The sources of my information and the grounds for any assertions are as follows:

8. The FBI, along with other federal, state and local law enforcement agencies are actively investigating Eli Gage EASON. EASON is suspected of purchasing chemical precursors and device components with the intent to manufacture and possess a destructive device in violation of Title 18 United States Code, §922 (g)(1).

### INVESTIGATION INTO ELI GAGE EASON

9. On May 27, 2020, the FBI received information from confidential sources that EASON has ordered a variety of chemicals and components that, when combined, would form a

destructive device with shrapnel, and that these items have been shipped to 285 Eagle Creek Road, Clover SC.

10. Law enforcement has confirmed that EASON resides at 285 Eagle Creek Road, Clover, South Carolina, which is a one-story, single-family home with a driveway and a fenced-in backyard in a suburban setting. Through physical surveillance, law enforcement has seen EASON at that property on several occasions and has also witnessed EASON walk to the mailbox and check for mail.

11. Review of EASON's criminal history shows that he has a prior felony conviction. On October 10, 2016, EASON threatened his mother with a weapon, physically assaulted her, and demanded money. She was able to eventually escape the home and called the police. On August 10, 2017, EASON was convicted of Assault and Battery in the First Degree and was sentenced to 3 years, suspended to 18 months' probation. Due to this felony conviction, EASON is a person prohibited from possessing firearms, ammunition, and destructive devices.

12. Because of the circumstances surrounding his conviction, EASON and his family members determined that EASON should not live with his mother. EASON petitioned the South Carolina Department of Probation, Pardon and Parole for acceptance into a group home in the summer of 2018. EASON was accepted into the group home, Max Abilities of York County, formerly York County Board of Disabilities and Special Needs. EASON remained in the group home for approximately 6 months before returning to live with his mother at the 285 Eagle Creek Road, address.

13. On June 15, 2020, law enforcement interviewed a supervisor at Max Abilities of York County, to discuss EASON. The supervisor stated that EASON was fascinated with

explosives, and he was aware that EASON had called the ATF Hotline to ask which explosives he could possess legally on November 27, 2018. The supervisor mentioned that he told EASON that he had ten pine trees on his property that he wanted to remove, and EASON asked him if he had heard of Tannerite. I know that Tannerite is a binary explosive. ATF defines binary explosives as pre-packaged products consisting of two separate components, usually an oxidizer like ammonium nitrate and a fuel such as aluminum or another metal. These components typically are not listed separately on the List of Explosive Materials and do not meet the definition of "Explosives" in 27 CFR 555.11. Therefore, ATF does not regulate the sale and distribution of these component chemicals, even when sold together in binary "kits." However, when the binary components are combined, the resulting mixture is an explosive material subject to the regulatory requirements found in 27 CFR, Part 555. EASON told the supervisor that he could blow the trees out of the ground with enough Tannerite.

14. On June 17, 2020, law enforcement interviewed a residential supervisor at the Max Abilities group home. According to the residential supervisor, EASON tried to scare her one night in November 2018. She noticed EASON on his iPad watching some videos about making bombs. EASON went into his bedroom and came out wearing a black ski mask, then returned to the bedroom and came out wearing the ski mask and black latex gloves. EASON made a comment about Osama Bin Laden and Muslims, and then went back into his bedroom. EASON returned with a rectangular package or envelope with wires sticking out of it. The package was making an audible ticking noise, like a timer or clock. The residential supervisor became concerned and contacted her supervisors, including the manager discussed above, and the house manager. EASON then told residential supervisor

the package was a fake bomb. Max Abilities group home did not report the incident to law enforcement.

15. On June 19, 2020, FBI received records from EBay Inc. in response to a Grand Jury Subpoena. These records showed the following chemical purchases were made from accounts associated to EASON and shipped to either EASON or his mother, Catherine Robinson, at 285 Eagle Creek Road, Clover, SC:

    (a) Aluminum metal powder, 85 grams, purchased April 19, 2019

    (b) Hardwood activated charcoal powder, 1 lb., purchased July 30, 2019

    (c) Boric acid, 4 oz. bottle, 99.9% pure, fine powder, purchased July 30, 2019

    (d) Sorbitol, 3 oz. bottle, 99% pure, fine powder, purchased August 4, 2019

    (e) Iron oxide red, 5 oz. bottle, 99.7% pure, purchased August 4, 2019

    (f) Food grade hydrogen peroxide, 12%, 16 oz., purchased February 3, 2020

    (g) Pure citric acid powder, grade A anhydrous, 1 lb., purchased February 3, 2020

    (h) Coghlans solid fuel tablets, 48 pack, Hexamine, purchased February 3, 2020

16. The FBI's Terrorist Explosive Device Analytic Center (TEDAC) conducted a review of EASON's and Robinson's EBay transaction history. The fuels and oxidizers, acids, and miscellaneous chemicals listed above were determined to be chemical precursors for explosive devices. Potential explosives that can be made utilizing the above items include:

    (a) Hexamethylene triperoxide diamine (HMTD), a sensitive primary explosive, can be made by reacting hexamine fuel tablets with hydrogen peroxide and citric acid;

    (b) Thermite, an incendiary material, can be made by blending iron oxide with aluminum powder;

    (c) Sorbitol and charcoal are fuels that can be blended with an oxidizer (such as

potassium nitrate, not listed) to make an improvised low explosive.

17. In addition to the chemicals, TEDAC identified other components in the EBay purchase history (Fireworks tubes, cannon fuse, lead balls, glass marbles, steel platted beebees) which can be used to construct IED main charges with chemical fusing systems and fragmentation (shrapnel) in the form of the listed lead, glass, and steel spheres. Based on my experience and knowledge, the addition of glass marbles and steel platted beebees to the explosives would create a destructive device designed for use as a weapon.

18. Law enforcement also discovered on the Ebay purchase history two digital scales, a rock tumbler, and an Erlenmeyer flask. I know that these are tools used to make precise measurements and combine substances.

19. On July 2, 2020, law enforcement received records of EASON's case management from Max Abilities of York County.

20. Review of EASON's case log revealed that on November 25, 2018 EASON was talking heavily about explosives to the first shift staff. EASON stated that he was tired of playing his game that he was ready to explode and blow stuff up. EASON continued to talk about explosives until he went to bed. Additionally, EASON searched online for different things to make explosive bombs. EASON also told staff that his mom was going to "buy him stuff Sunday from online." EASON showed staff a bullet that he had brought from home but there was no gunpowder in it.

21. According to notes written in EASON's case log dated November 26, 2018, staff overheard EASON telling his mom that he was going to order explosives online and get them sent to her ex-boyfriend Matthew's house so they can blow things up. He also talked about going to a concert and blowing things up.

22. According to notes written in EASON's case log, dated November 27, 2018, staff picked EASON up from class. EASON stated that he told his teacher that he wanted to major in chemistry and would love to be a chemist. EASON indicated that his teacher replied, "why would you like to be a chemist?" EASON replied, "I would love to blow up things."

23. Based on the above, I respectfully submit that probable cause exists to believe that evidence of a crime, particularly the manufacture and possession of explosives, destructive devices, components and tools used to manufacture destructive devices, documents, digital devices and records showing proof of possession of and manufacture of destructive devices as well as indicia of residency or ownership are currently located at the property described in Attachment A. Specifically, there is reason to suspect that Eli Gage EASON has violated Title 18, Section 922 (g)(1), of the United States Code by possessing a destructive device after being convicted in a court of a crime punishable by imprisonment for a term exceeding one year;

24. As such, I respectfully request permission to search the described location and any vehicles for items that constitute evidence of the commission of a criminal offense, fruits of the crime, items otherwise criminally possessed, and property which is or has been used as the means of committing a criminal offense (see Attachments A and B).

25. Assistant United States Attorney T. DeWayne Pearson has reviewed this affidavit.

[SIGNATURE BLOCK BELOW]

_____
BRIAN J. DOYLE
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This 22nd day of July, 2020
Columbia, South Carolina

_____
The Honorable Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE